# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **THE UNITED COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | Civil Action No.: 1:06cv00071 |
| **JEFFREY J. KEENAN,** | ) | |
| | ) | |
| Defendant. | ) | By: PAMELA MEADE SARGENT |
| | ) | United States Magistrate Judge |

This case comes before the court on the plaintiff's Motion to Remand, (Docket Item No. 13), ("the Motion"), pursuant to 28 U.S.C. § 1447(c) and Rule 12(b)(1) of the Federal Rules of Civil Procedure. The plaintiff, The United Company, ("United"), a Virginia corporation, contends that the defendant, Jeffrey J. Keenan, ("Keenan"), had not established his domicile in Georgia at the time the action was filed, and was, therefore, a Virginia domiciliary. Thus, United argues that this court does not have diversity jurisdiction over the dispute, and that the case should be remanded to Virginia state court because both parties are citizens of Virginia. Conversely, Keenan argues that the case should not be remanded to state court because he had taken the necessary steps to establish a new domicile in Georgia. This Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing on the Motion was held on September 21, 2006. As directed by the order of referral, the undersigned now submits the following report and recommendation.

-1-

## I. Procedural History

This case was originally initiated by United when it filed a complaint in Virginia state court seeking the repayment of a $10,000,000 special bonus, as well as other incidental damages, based upon claims of breach of contract, promissory estoppel and unjust enrichment. Keenan removed the matter to this court pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. Then, Keenan filed a motion to dismiss, (Docket Item No. 3), United's complaint for failure to state a claim upon which relief could be granted. Thereafter, this court entered a Stipulated Order on June 29, 2006, in which both parties agreed that the date for United to file its response to the motion to dismiss would be "postponed [and] ... delayed until the Court determines whether it has subject matter jurisdiction to resolve the merits of the claims of this action." (Stipulated Order, Docket Item No. 12, at 1.) The Stipulated Order also set deadlines for filing the Motion to Remand, any memorandum in support of the Motion to Remand and the opposition to the Motion to Remand. (Stipulated Order at 1-2.)

## II. Facts

On October 14, 2002, Keenan was hired by United to serve as president and chief executive officer, ("CEO"), of the company for a period of five years. During his employment with United, Keenan resided in Virginia. In addition to a base salary and an annual bonus, United and Keenan agreed that a special bonus would be paid at the end of Keenan's period of service. During the first year of Keenan's employment, he requested an early payment of the special bonus at a discounted rate of $10,000,000. After several discussions, United agreed to pay Keenan the

$10,000,000 in two installments. However, on June 22, 2005, Keenan notified United that he would not complete the five-year term as president and CEO.

In February 2006, Keenan was presented with a potential employment opportunity with Roark Capital Group in Atlanta, Georgia. On March 6, 2006, Keenan accepted the position and began work in Georgia. Once Keenan started work in Georgia, he resided in an extended-stay hotel. Keenan took a significant amount of his personal property along with him, including clothing, office furniture/equipment, television/stereo systems, files, personal records, computers, two automobiles, a motorcycle and his personal airplane. However, several vehicles owned by Keenan remained in Virginia, where they were registered. Keenan began having his personal mail delivered to Georgia. Keenan also changed the mailing address on his bank accounts, mortgage account, brokerage accounts, home insurance policy, automobile insurance policy and IRA account. Moreover, on March 22, 2006, Keenan cancelled his Virginia cellular phone service and opened an account with a Georgia cellular service, which assigned him a Georgia telephone number.

When Keenan moved to Georgia to begin work, his wife and son remained in Virginia. Although his family was residing in Virginia, they planned to join Keenan in Georgia following his son's high school graduation. Furthermore, on March 24, 2006, Keenan's wife, who was an instructor at Emory & Henry College in Virginia, notified her employer that she would not be returning to teach at the college. Once Keenan started work in Georgia in March, he returned to Virginia on two occasions to visit his family, staying two nights on each visit. In an e-mail sent by Keenan, he indicated that once he accepted the job in Georgia, he planned to put his Virginia

-3-

Case 1:06-cv-00071-PMS   Document 19   Filed 10/20/06   Page 3 of 13   Pageid#: 235

home "on the market immediately and then ... move to Atlanta in June," when his son completed high school. (Plaintiff's Exhibit No. 2, Docket Item No. 14, at 1). Keenan also indicated that he would be "commuting back and forth from Abingdon on [the] weekend[s] until June." (Plaintiff's Exhibit No. 2 at 1).

In late March of 2006, Keenan attempted to obtain a Georgia driver's license and attempted to register to vote in Georgia. However, he was unable to do so until he had a permanent address.

On March 24, 2006, Keenan entered into an exclusive brokerage agreement to sell his real property in Abingdon, Virginia. He paid a marketing advance of $10,000 to the broker. During this same time period, Keenan retained a real estate broker and a real estate attorney to assist him in purchasing a home in Atlanta, Georgia. As a result, Keenan incurred legal fees in March and April. On April 19, 2006, Keenan executed a one-year lease for an Atlanta apartment. Then, on May 23, 2006, Keenan signed a purchase agreement for an Atlanta home and paid the seller $200,000 in earnest money.

On April 21, 2006, as a result of a dispute that arose between United and Keenan, United filed a complaint in Virginia state court for breach of contract, promissory estoppel and unjust enrichment. Keenan subsequently removed the case to this court on June 15, 2006. Thereafter, United responded by filing a motion to remand the case back to state court based upon lack of diversity jurisdiction.

-4-

Case 1:06-cv-00071-PMS    Document 19    Filed 10/20/06    Page 4 of 13    Pageid#: 236

III. *Analysis*

*A. Standard of Review*

It is well-settled that, on a motion to remand, "the removing party bears the burden of establishing jurisdiction." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *see also Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994). In addition, the court must strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. *See Mulcahey*, 29 F.3d at 151; *see also In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993); *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3rd Cir. 1992). "Because federal courts are courts of limited jurisdiction, 'there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand.'" *Werner v. Busch Entm't Corp.*, 2006 U.S. Dist. LEXIS 65771 V, at *2 (M.D. Fla. Sept. 14, 2006)(quoting *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001)). The "court must assume as true all factual allegations of the complaint." *Batoff,* 977 F.2d at 852 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3rd Cir. 1987)). The court also must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Batoff,* 977 F.2d at 852 (quoting *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3rd Cir. 1990)).

A defendant may remove a case based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. A district court has original jurisdiction over matters between citizens of different states when the amount in controversy exceeds $75,000. *See* 28

-5-

U.S.C.A. § 1332(a)(1)(West 2006). When a defendant removes a case from state court based upon diversity jurisdiction, the defendant must prove complete diversity. Moreover, for removal to be deemed valid, diversity of citizenship must exist at the time the notice of removal is filed. *See Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002); *see also Sayers v. Sears, Roebuck & Co.*, 732 F. Supp. 654, 656 (W.D. Va. 1990). Diversity of citizenship is determined at the time an action is commenced. *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). Thus, because the amount in controversy is not at issue here, in order to determine whether this court has jurisdiction, we must determine whether or not Keenan had established a new domicile at the time this action was commenced and continued in that domicile at the time the action was removed to this court.

*B. Discussion*

This court must accept all factual allegations of the complaint as true. However, in this case, the complaint does not provide the facts necessary to determine the question at issue. Here, we must look to the subsequent pleadings, including the sworn affidavits, to determine the relevant factual scenario. At the hearing on the Motion, the parties indicated that there was no dispute as to the relevant facts. Instead, the dispute lies in whether those facts show that Keenan had established a Georgia domicile as of April 21, 2006.

Although often used interchangeably, the terms domicile and residence are distinct legal terms. A person may have several residences, but he or she can have only one domicile. *Comm'r of Internal Revenue v. Nubar*, 185 F.2d 584, 587 (4th Cir.

1950); *see also Swift & Co. v. Licklider*, 7 F.2d 19, 20 (4th Cir. 1925). Therefore, until a person establishes a new domicile, that person's former domicile will govern. *See Mitchell v. U. S.*, 88 U.S. 350, 353 (1874).

"[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and [intends] to remain there permanently or indefinitely.'" *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Furthermore, a person may change his domicile "instantly by taking up residence in another state with the intent to remain there. 'He need not intend to remain permanently at the new domicile; it is enough that he intends to make the new state his home and that he has no present intention of going elsewhere.'" *Gambelli v. U. S.*, 904 F. Supp. 494, 497 (E.D. Va. 1995)(citing *Miller v. Lee*, 241 F. Supp. 19, 22 (W.D. S.C. 1965)). Based upon well-settled Supreme Court precedent, a new domicile may be established by a showing of (1) physical presence in a new state; and (2) the intent to remain there. *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)(citing *Tex. v. Fla.*, 306 U.S. 398, 424 (1939)).

Here, it is obvious that Keenan had physically moved to Georgia at the time this action was commenced. However, in determining Keenan's intent to remain, the court must evaluate several subjective and objective factors. Some courts have noted that a person's declarations of intent as to their domicile are to be "given heavy, but not conclusive, weight." *Hamilton v. Accu-Tek*, 13 F. Supp. 2d 366, 370 (E.D. N.Y. 1998). Additionally, courts tend to examine such factors as where the individual works; where the center of the individual's social, religious, political and civic life is located; where an individual pays taxes; and where an individual owns property. *See*

-7-

*Mitchell*, 88 U.S. at 353; *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3rd Cir. 1972); *Rayfield v. Nat'l Auction Group, Inc.*, 878 F. Supp. 203, 206 (M.D. Ala. 1995).

Based upon the facts presented, not only had Keenan physically moved to Georgia, but he also had taken significant steps to demonstrate an intent to remain there. On March 5, 2006, Keenan moved to Atlanta, Georgia, and started his new job the following day. While working in Georgia, Keenan resided at an extended-stay hotel. Keenan transported a significant amount of personal items and property to Georgia, including clothing, files, personal records, automobiles, furniture, office equipment and a personal airplane. In addition, Keenan began having his personal mail delivered to Georgia. Keenan also took the proper steps to change his mailing address on bank accounts and other important items. Furthermore, Keenan canceled his cellular phone service in Virginia and signed up for a Georgia cellular service.

More importantly, in March 2006, Keenan began to search for a new home in Georgia. Keenan hired a real estate broker and a real estate attorney to assist in his plan to purchase a home. Keenan's wife also traveled to Georgia to participate in the process of searching for a new home. During this time, Keenan incurred legal fees and expenses as a result of his desire to purchase a home in Georgia. Because Keenan planned to relocate to Georgia, he entered into an exclusive brokerage agreement to sell his home in Abingdon, Virginia. Keenan paid a $10,000 marketing advance to assist with the sale of his Virginia home. Additionally, and most importantly, Keenan executed a one-year lease for an apartment in Georgia on April 19, 2006, two days prior to United commencing the initial action in Virginia state court.

-8-

Despite these facts, United argues that Keenan has failed to meet his burden to demonstrate the existence of diversity jurisdiction. United contends that Keenan's notice of removal merely included a conclusory assertion that Keenan was domiciled in Georgia as of April 21, 2006. In its memorandum of law in support of the Motion, United requested that it be afforded the opportunity to conduct limited discovery on the issue of domicile since the facts relevant to this motion to remand "are not intertwined with the underlying substantive claims of breach of contract and unjust enrichment." (Plaintiff's Memorandum Of Law In Support Of Motion To Remand, Docket Item No. 14, at 4-5.)

In addition, United argues that at the time it initiated the underlying action, Keenan had not established a Georgia domicile. At the hearing on the Motion, United conceded the fact that Keenan is now a Georgia domiciliary, and that at the time the action was commenced, he had plans to become a Georgia domiciliary. However, United contends that as of April 21, 2006, Keenan was merely in a 'transitional stage' and had yet to establish a new domicile. *See D. C. v. Murphy*, 314 U.S. 441, 457-58 (1941). United claims that Keenan's actions amounted to a future intent to establish a new domicile because his family remained in Virginia, he owned property in Virginia and he owned vehicles that remained registered in Virginia.

United also argues that residence is insufficient to establish domicile. In essence, United argues that the fact that Keenan worked and resided in Georgia during the time in question does not override his own declarative intent. In an e-mail, Keenan explained that he planned to commute back and forth from Georgia to Virginia on weekends until June, and that he planned to move to Georgia in June.

(Plaintiff's Exhibit No. 2 at 1.)

United also relies on *Hendry v. Masonite Corp.*, 455 F.2d 955, 956 (5th Cir. 1972), in which the Fifth Circuit held that diversity jurisdiction did not exist in a situation where the defendant could not prove that he had established a new domicile at the time he was served with process in a case that was initiated against the defendant and against his company. United contends that *Hendry* is very similar to the case at hand, and should be instructive. Although there are factual similarities, United fails to recognize key distinctions in these cases. In *Hendry*, as here, the defendant was offered a new position in another state. *See* 455 F.2d at 956. The defendant in *Hendry* accepted the new position and established an office in the new location, worked in the new location, moved into an apartment in the new location, transported clothing, personal effects and company files to the new location, began to search for a home in the new location and entered into a contract to sell his home in the former location. *See* 455 F.2d at 956. In *Hendry*, the court found that diversity jurisdiction did not exist because the defendant failed to demonstrate that his domicile had changed prior to the time he was served with process. *See* 455 F.2d at 956. In his sworn affidavit, however, the defendant in *Hendry* stated that he voted in his former location on the day that he was served with process. *See* 455 F.2d at 956. As stated earlier, in order to establish a new domicile, one must be physically present in the new state with the intent to permanently or indefinitely remain there. *See Holyfield*, 490 U.S. at 48. In *Hendry*, the fact that the defendant chose to exercise his right to vote demonstrates that he had not completely decided to abandon one domicile and establish a new one. *See* 455 F.2d at 956.

Here, Keenan clearly had intentions to permanently abandon his Virginia domicile and to establish a new one in Georgia. At the time the action was commenced against him, Keenan had entered into a one-year lease for an apartment in Georgia; he had begun work in Georgia; he had entered into an agreement to sell his home in Virginia; he had hired a real estate broker and attorney to assist in the purchase of a home in Georgia; he had established a new mailing address and cellular phone service; and he had transported a significant amount of personal items and property to Georgia. When the action was filed against Keenan on April 21, 2006, not only had Keenan physically moved to a new state, but he also had exhibited an obvious intent to permanently or indefinitely remain in Georgia. Therefore, I find that on April 21, 2006, Keenan was domiciled in Georgia.

Based upon the relevant facts before this court, Keenan has met his burden and established that diversity of citizenship existed between the two parties as of April 21, 2006, and continued through the date of removal. Accordingly, I will recommend that the Motion to Remand be denied.

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. As of April 21, 2006, Keenan was physically present in the state of Georgia and had demonstrated the necessary intent to remain there permanently or indefinitely;

2. As of April 21, 2006, when United commenced this action in

>   Virginia state court, Keenan had taken sufficient steps to establish a Georgia domicile;

3. Keenan's domicile in Georgia continued through June 15, 2006, the date of removal of this action;

4. As of April 21, 2006, and continuing through June 15, 2006, Keenan was a citizen of the state of Georgia; and

5. As of April 21, 2006, and continuing through June 15, 2006, diversity of citizenship existed between the parties in this case.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the plaintiff's Motion to Remand, (Docket Item No. 13).

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record.

DATED: October 20, 2006.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE