# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **THE UNITED COMPANY,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:06cv00071 |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **JEFFREY J. KEENAN,** | ) | |
| | ) | |
| Defendant. | ) | By: Pamela Meade Sargent |
| | ) | United States Magistrate Judge |

The case is currently before the court on the Plaintiff's Motion For Leave To File Second Amended Complaint, (Docket Item No. 32), ("Second Motion to Amend"), which was filed on April 17, 2007. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1332 and § 1441. This Second Motion to Amend is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommendation.

*I. Facts & Procedural History*

On October 14, 2002, Jeffrey J. Keenan was hired by The United Company, ("United"), to serve as its president and chief operating officer, ("COO"). In addition to a base salary and an annual bonus, United and Keenan agreed that a special bonus would be paid at the end of Keenan's period of service. During the first year of Keenan's employment, he requested an early payment of the special bonus at a

-1-

discounted rate of $10 million. After several discussions, United agreed to pay Keenan the $10 million in two installments. United paid Keenan $2 million on December 26, 2003, and the remaining $8 million on January 23, 2004. On June 22, 2005, Keenan notified United that he would not continue his employment as president and COO of the company. In February 2006, Keenan was presented with a potential employment opportunity with Roark Capital Group in Atlanta, Georgia. On March 6, 2006, Keenan accepted the position and began work in Georgia.

United contends that it entered into an oral agreement with Keenan in which he agreed to remain as president of the company for a period of five years. Furthermore, United claims that, in reliance upon this oral agreement, it paid Keenan the agreed upon sum of $10 million in two installments. United argues that this oral agreement was breached when Keenan resigned on June 22, 2005.

This case was initiated on April 21, 2006. United sought, in Virginia state court, repayment of the $10 million special bonus, as well as other incidental damages, based upon claims of breach of contract, promissory estoppel and unjust enrichment. Keenan removed the matter to this court on June 15, 2006, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. On November 1, 2006, United filed a motion to amend its complaint, (Docket Item No. 20), ("First Motion to Amend"), which was granted by this court on November 2, 2006. (Docket Item No. 21.) In the amended complaint, United eliminated its promissory estoppel claim and added a quasi-contract claim. (Docket Item No. 22.) United's First Motion to Amend was unopposed by Keenan.

On December 7, 2006, the court entered a Scheduling Order setting this matter for trial beginning June 13, 2007. (Docket Item No. 26.) This Scheduling Order also set April 18, 2007, as the date by which all discovery should have been completed. On February 15, 2007, the parties jointly moved to extend the discovery deadline and continue the trial. (Docket Item No. 28.) By order dated February 16, 2007, the court continued the trial of this matter until September 25, 2007, and adopted the parties' Amended Discovery Plan. (Docket Item No. 29.) This Amended Discovery Plan required all discovery to be completed by May 25, 2007.

On April 17, 2007, United filed the Second Motion to Amend, currently before the court, attempting to add claims for breach of fiduciary duty and constructive fraud to the complaint, and setting forth factual allegations in support of those claims. United argues that ongoing investigation and discovery revealed evidence to support these additional claims. United contends that one of Keenan's primary responsibilities as president and COO was to lead the company's venture to return to the coal mining business, ("the Coal Plan").  In addition, based upon Keenan's alleged promise to remain at United for at least five years, United claims that it invested $200 million into the Coal Plan, which Keenan was critical in developing. Under the Coal Plan, United was to acquire, build and quickly sell a number of coal mining operations and properties.  Keenan allegedly urged United to retain a new senior management team to oversee the implementation of the Coal Plan.

United asserts that it has recently discovered facts that demonstrate that Keenan concealed his true intentions regarding his future with United.  Specifically, United refers to an e-mail sent by Keenan on March 16, 2005, to a personal friend in which

-3-

Case 1:06-cv-00071-PMS   Document 44   Filed 05/11/07   Page 3 of 10   Pageid#: 466

Keenan allegedly stated that he did not plan to continue his employment with United, and that he did not expect the Coal Plan to be profitable, but that he nevertheless urged United to heavily invest in it. United notes that, after sending this e-mail, Keenan met with United representatives to convince them to hire the suggested management team and to recommit to the Coal Plan. As a result, United hired the new management team on April 18, 2005. Based upon this information, United argues that its Second Motion to Amend should be granted to enable it to add the claims of constructive fraud and breach of fiduciary duty.

United concedes that this e-mail was sent by Keenan using United's corporate computer network and that, since its sending, has resided on one of United's computer servers. United has not informed the court of the exact date on which it discovered this e-mail, although it has stated that it became aware of this e-mail message in early March 2007. (Second Motion to Amend, Exhibit A at 13.) From the information provided the court, it is apparent that United discovered this e-mail prior to March 15, 2007, because United's counsel questioned Keenan on this e-mail at his deposition on this date.

## II. Analysis

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on

-4-

the merits." The Court further stated that leave to amend shall be freely given unless the party exhibits an "apparent or declared reason -- such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman*, 371 U.S. at 182.

The Fourth Circuit, in applying the Supreme Court's decision in *Foman*, has effectively interpreted Rule 15(a) as "mandat[ing] a liberal reading of the rule's direction on 'free' allowance." *Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987) (quoting *Foman*, 371 U.S. at 182). Despite this liberal reading, the decision as to whether a motion to amend should be denied lies within the district court's discretion. *See Medigen of Ky., Inc. v. Pub. Serv. Comm'n of W. Va.*, 985 F.2d 164, 167 (4th Cir. 1993). "A court may refuse to allow leave to amend pleadings when the proposed changes would be futile." *New Beckley Mining Corp. v. Int'l Union*, *U.M.W.A.*, 18 F.3d 1161, 1164 (4th Cir. 1994). Likewise, the district court may deny a motion to amend "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987) (citations omitted).

"Belated claims which change the character of litigation are not favored." *Deasy,* 833 F.2d at 42 (citations omitted). Having access to evidence for months and failing to discover its basis for asserting an amended claim amounts to undue delay. *See Smith v. Angelone,* 111 F.3d 1126, 1134 (4th Cir. 1997). Allowing such amendments late in litigation can prejudice the nonmoving party by either not having an opportunity to conduct adequate discovery on an amended claim or by forcing the

-5-

nonmoving party to conduct discovery a second time. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.,* 43 F.3d 922, 940 (4th Cir. 1995); *Nat'l Bank of Wash. v. Pearson,* 863 F.2d 322, 328 (4th Cir. 1988). Furthermore, "[a]mendments near the time of trial may be particularly disruptive, and may therefore be subject to special scrutiny." *Deasy,* 833 F.2d at 41 (citations omitted).

In this case, United's Second Motion to Amend appears to be solely based upon information contained in Keenan's March 16, 2005, e-mail. Based upon the facts before the court, this e-mail was created on United's computer server by Keenan while he was employed by United. Furthermore, this e-mail continued to reside on United's server until discovered by United. Although United claims that this information was not discovered until early March 2007, the fact that the e-mail was created and resided on United's own computer server demonstrates that the information has been available to and discoverable by United since its creation on March 16, 2005, well before United initiated its original claims in April 2006. Keenan argues that the information within this e-mail is "directly responsive to [his] First Set of Discovery, which was served on United on November 21, 2006." (Defendant's Response And Memorandum Of Law In Opposition To Plaintiff's Motion For Leave To File A Second Amended Complaint at 8.) (Docket Item No. 33.) As such, Keenan claims that the document should have been produced when United responded to the discovery requests on February 1, 2007. I agree.

The facts before the court show that the e-mail in question has been in possession of United since the e-mail was created on March 16, 2005, and also has been discoverable during all relevant times since this case was initiated. United has

-6-

Case 1:06-cv-00071-PMS   Document 44   Filed 05/11/07   Page 6 of 10   Pageid#: 469

offered the court no explanation for why this e-mail was not produced in the response to discovery requests prior to its production at Keenan's deposition. Moreover, even if there was no undue delay in the discovery and production of this e-mail on United's part, I find undue delay by United in the filing of its Second Motion to Amend. As noted earlier, a district court may deny a motion to amend "where the motion has been unduly delayed and where allowing the amendment would unduly prejudice the non-movant." *Deasy*, 833 F.2d at 40.

Here, it appears that United's failure to thoroughly conduct discovery of items within its possession has been dilatory in nature. In other words, a thorough investigation of United's own records would have revealed the e-mail in question and would have prevented further delay in this action as there would have been no need for additional motions to amend. Thus, since the information, whether discovered or not, has been in United's possession since well before this action was commenced, the undersigned finds that the claims should have been included either in the original complaint, or in United's First Motion to Amend.

Here, United claims that the March 16, 2005, e-mail was not discovered until early March 2007. However, United did not file its Second Motion to Amend until April 17, 2007, approximately one and a half months after United claims the relevant information was discovered. Therefore, there was an obvious delay in presenting the Second Motion to Amend. According to United, the e-mail presented sufficient facts to justify claims of constructive fraud and breach of a fiduciary duty; thus, the Second Motion to Amend should have been made once this became apparent. Instead, United waited more than one month to file the Second Motion to Amend. Furthermore,

-7-

United has offered no explanation justifying its delay in filing its Second Motion to Amend after its discovery of this e-mail.

A delay, in and of itself, without prejudice, does not justify the denial of a motion to amend. *See Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039, 1044 (4th Cir. 1984) (citations omitted). Also, as explained in *Deasy*, "'a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent. A party who delays in seeking an amendment is acting contrary to the spirit of the rule.'" 833 F.2d at 41 (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1488 (1971)). Because of United's delay, an obvious prejudicial effect has fallen upon Keenan. If United is allowed to amend its complaint at this stage, Keenan would be prejudiced in that he would likely need to conduct further discovery on these new claims, including additional discovery depositions of witnesses he already has deposed. With the discovery deadline set for May 25, 2007, granting the Second Motion to Amend also would likely result in an extension of the deadline as well as the trial, further delaying a case that has been pending in this court for nearly one year and which has been continued on one previous occasion. Thus, not only has United created an undue delay, but it also has created a delay that will undoubtedly prejudice Keenan and his counsel in their attempt to defend this case.

Accordingly, for the reasons stated above, I am of the opinion that United's Second Motion to Amend should be denied.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The e-mail which is the basis of United's Second Motion to Amend was in the possession of United during all relevant times, as the e-mail was created and maintained on United's computer server since March 16, 2005. Thus, this e-mail has been available to and discoverable by United since before its filing of this case;

2. United became aware of Keenan's March 16, 2005, e-mail in early March 2007. However, United did not file its Second Motion to Amend with this court until one and a half months later. Thus, United failed to file its Second Motion to Amend as soon as the necessity for altering the complaint became apparent;

3. United's delay in discovering the e-mail at issue and in moving to amend as a result were undue;

4. If the Second Motion to Amend were to be granted, Keenan would be forced to conduct additional discovery as to the newly asserted claims and conduct additional depositions of witnesses who have already been deposed;

5. If the Second Motion to Amend were to be granted, both the discovery deadline and the trial of this matter would likely be continued;

6. Thus, granting the Second Motion to Amend would unduly prejudice Keenan.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend that the court deny the

plaintiff's Second Motion to Amend.

## NOTICE TO PARTIES

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(c):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk also is directed to send copies of this Report and Recommendation to all counsel of record.

DATED:   This 11th day of May 2007

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE